**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THELMA E. ALLEN and    :
CHARLES R. ALLEN,     :
             :  Civil Action No.:  03-1990 (RMU)
     Appellants,  :
             :  Document No.:  10
     v.      :
             :
WELLS FARGO BANK    :
MINNESOTA, N.A.,     :
             :
     Appellee.   :

## MEMORANDUM OPINION

### AFFIRMING THE BANKRUPTCY COURT'S DENIAL OF THE APPELLANTS' MOTION FOR RECONSIDERATION

## I. INTRODUCTION

  This matter comes before the court on appeal from the United States Bankruptcy Court for the District of Columbia ("Bankruptcy Court"). The *pro se* appellants appeal an adverse ruling in their bankruptcy case. The appellants argue that the Bankruptcy Court erred by denying their motion for reconsideration of its earlier decision to annul the automatic stay[1] on the foreclosure proceedings. Because the Bankruptcy Court did not commit a clear error with respect to its factual findings and because the Bankruptcy Court's legal conclusions are correct, the court affirms the Bankruptcy Court's decision to deny the appellant's motion for reconsideration.

---

[1]  The filing of a bankruptcy petition operates as an automatic stay of a foreclosure sale. 11 U.S.C. § 362(a)(4)-(5).

## II.    BACKGROUND

### A.    Factual History

From 1986 until 2003, appellant Charles Allen ("Mr. Allen") was the sole record owner

of his residence, a property located at 1854 Fifth Street, N.W. in Washington, D.C.  Bankr. Ct.

Decision Regarding Mot. for Recons. ("Bankr. Ct. Decision") at 2.  Appellant Thelma Allen

("Mrs. Allen"), Mr. Allen's mother, claims that she had an ownership interest in the property

because she allegedly provided unsecured financial assistance to Mr. Allen between 1986 and

1999.  *Id.*  According to the appellants, they used Mrs. Allen's financial assistance to fund a

substantial renovation of the property.  *Id.*

Mr. Allen executed a mortgage with the appellee in August 1999.  The terms of the

mortgage agreement required Mr. Allen to make monthly payments of $1,941.64 over a 30-year

term.  *Id.* at 3.  Mr. Allen secured the mortgage with his property at 1854 Fifth Street, N.W. via a

deed of trust.  *Id.* at 3.  The deed of trust securing the property contained a covenant of seisin[2]

and a warranty of title[3] stipulating that Mr. Allen was the sole owner of the property and that he

agreed to acceleration of his mortgage payments in the event that he breached any terms of the

deed.  *Id.* at 4-5.  The deed of trust also contained a due-on-transfer clause stipulating that if all

or any part of the property was sold or transferred without the appellee's prior written consent,

---

[2]      A covenant of seisin is a covenant "stating that the grantor has an estate, or the right to convey an estate, of the quality and size that the grantor purports to convey."  BLACK'S LAW DICTIONARY 371 (7th ed. 1991).

[3]      A warranty of title is "a warranty that the seller or assignor of property has title to that property, that the transfer is rightful, and that there are no liens or other encumbrances beyond those that the buyer or assignee is aware of at the time of contracting."  BLACK'S LAW DICTIONARY 1583 (7th ed. 199).

the appellee could require immediate payment in full of all sums secured by the deed of trust.  *Id.* at 8.

After falling more than thirteen months behind in monthly mortgage payments, Mr. Allen owed the appellee more than $200,000 on the mortgage.  *Id.* at 11.  Mr. Allen filed a petition in the Bankruptcy Court under Chapter 13 of the Bankruptcy Code on February 27, 2002.  *Id.* Because Mr. Allen had made only one payment as part of his bankruptcy plan,[4] the Bankruptcy Court dismissed Mr. Allen's case with prejudice on January 23, 2003.  *Id.*  After the Bankruptcy court dismissed Mr. Allen's case, the appellee scheduled a foreclosure sale of the property at 1854 Fifth Street, N.W. on March 27, 2003.  *Id.* at 11, 13.

Six days prior to the scheduled foreclosure sale, on March 21, 2003, Mr. Allen executed a deed conveying the property at 1854 Fifth Street, N.W. to himself and Mrs. Allen as tenants in common, each owning a 50% interest.  *Id.* at 13-14.  Three days later, on March 24, 2003, Mr. Allen filed his mother's bankruptcy petition commencing her case under Chapter 13 of the Bankruptcy Code.  *Id.* at 14.  The appellants allegedly called the office of Draper & Goldberg, the law firm representing the appellee, and left a voice mail message to notify the appellee of Mrs. Allen's pending bankruptcy petition in an effort to stop the foreclosure sale.  Appellants' Br. at 4.  The appellee claims, however, that it did not receive notice of Mrs. Allen's pending bankruptcy petition.  Appellee's Br. ¶ 3.  On March 27, 2003, the appellee sold the property located at 1854 Fifth Street, N.W. for $226,000 at a foreclosure sale to Case Capitol Corporation.

---

[4]     Every Chapter 13 debtor must file a bankruptcy plan providing for the repayment of debts.  11 U.S.C. §§ 1321, 1322; *see also Matter of Foster*, 670 F.2d 478, 483 (5th Cir. 1982) (explaining that "[i]n addition to filing a [bankruptcy] petition, the debtor files a plan providing for the repayment of all or a portion of the claims against the debtor out of the debtor's future income").

Bankr. Ct. Decision. at 14-15.

## B.    Procedural History

After Mrs. Allen failed to complete the required bankruptcy filings, the Bankruptcy Court voluntarily dismissed her case on May 27, 2003.  Appellee's Br. ¶ 4.  On June 25, 2003, the appellee filed a motion to reopen Mrs. Allen's bankruptcy petition and to annul the automatic bankruptcy stay for cause pursuant to 11 U.S.C. § 362(d)(1).  *Id*. ¶ 6.  On July 17, 2003, the Bankruptcy Court annulled the stay in the appellants' foreclosure proceedings, effectively validating the foreclosure of the appellants' property.  Mem. Order Den. the Appellee's Mot. to Dismiss Appeal and to Strike the Appellants' Br. (March 22, 2003) ("Mem. Order") at 1.  The appellants then moved for reconsideration of the annulment, and on September 5, 2003, the Bankruptcy Court issued its final order denying the appellants' motion.  *Id*.

On September 15, 2003, the appellants filed a notice of appeal with the Bankruptcy Court.  *Id*.  After a complicated series of filings by the appellants and errors in assignment of motions to various judges in the district court,[5] the case came before this court.  *Id*. at 1-2.  The appellants filed a brief in support of their appeal on April 7, 2004.  On March 22, 2005, this court directed the appellee to file a brief in opposition of the appeal.  *Id*. at 4.  The appellee filed its opposition to the appellants' appeal on April 25, 2005.  The court now turns to the appellants' motion.

----

[5]    The court's March 22, 2005 Memorandum Order contains a more detailed account of the case's tangled procedural history.

## III.   ANALYSIS

### A.   Legal Standard for Review of a Bankruptcy Court Decision

U.S. district courts have jurisdiction over appeals of bankruptcy court decisions.  28 U.S. § 158(a).  On appeal from a bankruptcy court, a district court may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings.  FED. R. BANKR. P. 8013; *Johnson v. McDow (In re Johnson)*, 236 B.R. 510, 518 (D.D.C. 1999).  A district court shall not set aside findings of fact unless they are clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. FED. R. BANKR. P. 8013; *Johnson*, 236 B.R. at 518.  "The burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding.  That party must show that the court's holding was clearly erroneous as to the assessment of the facts or erroneous in its interpretation of the law and not simply that another conclusion could have been reached." *Johnson*, 236 B.R. at 518 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)).  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  As the Seventh Circuit memorably explained, "[t]o be clearly erroneous, a decision must . . . strike us as wrong with the force of a five week old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).  Courts, however, should review questions concerning the application of the controlling law *de novo* on appeal.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

**B.     The Court Affirms the Bankruptcy Court's Decision to Deny Reconsideration of the Annulment of the Automatic Stay on Foreclosure**

On September 5, 2003, the Bankruptcy Court denied the appellants' motion to reconsider the July 2003 annulment of the bankruptcy stay.  Bankr. Ct. Decision at 1.  The appellants now argue that the Bankruptcy Court's factual findings and legal conclusions were erroneous, and therefore, that the Bankruptcy Court abused its discretion by denying the appellants' motion for reconsideration of the Bankruptcy Court's earlier ruling annulling the automatic stay.  *See generally* Appellants' Br.  Specifically, the appellants argue that the Bankruptcy Court erred when it determined that: (1) the appellee did not receive notice of Mrs. Allen's March 2003 bankruptcy petition prior to the foreclosure sale, (2) Mrs. Allen's bankruptcy petition was filed in bad faith, (3) the deed of trust voided Mr. Allen's conveyance to Mrs. Allen, and (4) it was appropriate to annul the automatic stay.  The court addresses each one of these arguments in turn.

**1.     The Bankruptcy Court's Determination that the Appellee did Not Receive Notice of Mrs. Allen's Chapter 13 Filing Prior to Foreclosure is Not Clearly Erroneous**

The appellants argue that the Bankruptcy Court erred in determining that the appelle did not receive notice of Mrs. Allen's bankruptcy filing.  Appellants' Br. at 9.  Specifically, they allege that the Bankruptcy Court's determination is not supported by substantial evidence because the appellee's witness offered only uncorroborated hearsay testimony.  *Id.*  Further, the appellants introduce Federal Rules of Evidence 1002 and 1004 as bars to the admissibility of the

6

Loss Mitigation Supervisor's[6] testimony.[7]  *Id.* at 11.  As a last resort, the appellants argue that the

Bankruptcy Court should have drawn an adverse inference from the fact that the appellee failed

to produce any record of the appellants' voice mail message.[8]  The appellee, on the other hand,

argues that the court's conclusion that the appellee did not receive notice of Mrs. Allen's

bankruptcy filing represents a permissible view of the evidence, and therefore, is not clearly

erroneous.  *Id.* ¶ 18.

The Bankruptcy Court's finding that the appellee did not receive notice of Mrs. Allen's

Chapter 13 filing prior to foreclosure is a factual finding and, as such, is subject to the clearly

erroneous standard of review.  *Johnson*, 236 B.R. at 518 (citing *Anderson*, 470 U.S. at 573-74).

---

[6]     The Loss Mitigation Supervisor keeps track of the appellee law firm's telephone logs.
Appellants' Br. at 10.  The Loss Mitigation Supervisor testified that the telephone logs reflected that the
firm did not receive a phone call referring to either of the appellants.  Bankr. Ct. Decision Regarding
Mot. for Recons. ("Bankr. Ct. Decision") at 42.

[7]     Federal Rule of Evidence 1002 states that "to prove the content of a writing, recording,
or photograph, the original writing, recording, or photograph is required, except as otherwise provided in
these rules or by Act of Congress."  FED. R. EVID. 1002.  Federal Rule of Evidence 1004 describes
exceptions to the requirement that a party submit the original writing, recording, or photograph to prove
its content.  FED. R. EVID. 1004.  In the Advisory Committee Notes to Federal Rule of Evidence 1002
Congress explicitly states that the rule does not "apply to testimony that books or records have been
examined and found not to contain any reference to a designated matter."  *Id*.  That is precisely the
situation in the present case, where the appellee's witness reviewed the voice mail logs and found no
record of any message from the appellants.  Bankr. Ct. Decision at 42.  Therefore, the court concludes
that the witness's testimony in this case does not pose a problem under Federal Rule of Evidence 1002.

[8]     The adverse inference rule applies to instances in which it is proved that one side has
evidence within its possession that it chose to withhold from the other side.  *Overnite Transp. Corp. v.
NLRB*, 140 F.3d 259, 266 n.1 (D.C. Cir. 1998).  Missing in this case is any evidence that the appellee has
some record of the appellants' phone call or voice mail.  Accordingly, it is not appropriate to assume that
such evidence is being withheld.  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 587 F. Supp.
180, 189 (D.D.C. 1984) (explaining that a plaintiff wishing to draw an adverse inference "must establish,
at a minimum, that relevant evidence existed, that it was within the ability of the defendant to produce it,
and it had not been produced due to the actions of the defendant").  Therefore, the Bankruptcy Court
correctly declined to apply the adverse inference rule.  *Overnite Transp. Corp.*, 140 F.3d at 266 n.1
(stating that "the decision of whether to draw an adverse inference has generally been held to be within
the discretion of the factfinder").

The Bankruptcy Court heard testimony and reviewed voice mail records before coming to the

conclusion that the appellee never received notice of Mrs. Allen's March 24, 2003 bankruptcy

filing.[9]  Bankr. Ct. Decision at 41-42.  As the Bankruptcy Court stated, the appellants'

description of the voice mail message "was at best sketchy."  *Id.* at 43.  Mr. Allen himself

recognized that he was "uncertain whether he had contacted the appropriate office to stop the

foreclosure sale."  *Id.* at 43, 46.  Accordingly, the Bankruptcy Court's conclusion that the

appellee did not receive notice of the automatic stay in Mrs. Allen's bankruptcy case was not a

clear error.

## 2.    The Bankruptcy Court's  Determination that the Appellants' Chapter 13 Filing was an Abuse of the Bankruptcy System is Not Clearly Erroneous

The appellants argue that the Bankruptcy Court erred by re-opening Mrs. Allen's

bankruptcy case to annul the automatic stay because the appellee failed to establish that Mrs.

Allen's bankruptcy petition was filed in bad faith.  Appellants' Br. at 14.  The appellee counters

that regardless of whether the appellants acted in bad faith, the appellants' actions constitute an

abuse of the bankruptcy system.  Specifically, the appellee argues that the last minute transfer of

---

[9]        Furthermore, as the Bankruptcy Court stated, it was not required to find that Mr. Allen never left the message with the appellee's counsel, but only that the law firm, and therefore, the appellee, never became aware of the message.  *Id.*  at 42.  The responsibility rested squarely upon the appellants' shoulders to ensure that the appellee received notice of the transfer of property to Mrs. Allen and her subsequent bankruptcy filing.  *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (explaining that "[t]he debtor has the burden of providing the creditor with actual notice" of the automatic stay and that "[t]he standard for a willful violation of the automatic stay . . . is met if there is knowledge of the stay") (citing *Goichman v. Bloom*, 875 F.2d 224, 227 (9th Cir. 1989), *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.*, 902 F.2d 1098, 1105 (2d Cir. 1990), *Cuffee v. Atl. Bus. Cmty Dev. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990)).  *See also In re Soto*, 302 B.R. 757, 760 (Bankr. D.N.H. 2003) (stating that a debtor must provide a creditor with actual notice of the automatic stay and that the debtor bears the burden of showing that the creditor had actual knowledge of the stay).  It would not have been overly burdensome for the appellants to, as the Bankruptcy Court suggested, bypass the voice mail option and speak to a live person during business hours, or follow up their message with an additional phone call or written confirmation.  *Id*. at 43.

title from Mr. Allen to Mrs. Allen, a Pennsylvannia resident without sufficient resources to fund a bankruptcy plan, and Mrs. Allen's filing of the bankruptcy petition on the eve of the foreclosure sale, shows that the appellants abused the bankruptcy system.  Appellee's Br. ¶ 16.

Under 11 U.S.C. § 1307(c), courts have the power to dismiss Chapter 13 bankruptcy petitions "for cause."  11 U.S.C. § 1307(c).  Although this circuit has not ruled on the issue, other circuits have ruled that a lack of good faith is sufficient cause for dismissal of a bankruptcy petition.  These circuits have articulated a totality of the circumstances test for determining whether a bankruptcy petition was filed in good faith.  *In re Love*, 957 F.2d 1350, 1354, 1357 (7th Cir. 1992); *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir. 1993); *Soc'y Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, (6th Cir. 1992).  In considering whether the totality of the circumstances shows that a bankruptcy petition was filed in good faith, courts have generally considered factors such as

> the nature of the debt . . . the timing of the petition, how the debt arose, the debtor's motive in filing for bankruptcy, how the debtor's actions affected creditors, the debtor's treatment of creditors both before and after the petition was filed, and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Love*, 957 F.2d at 1357.  The Bankruptcy Court's determination that a bankruptcy petition was or was not filed in good faith is a purely factual finding evaluated under the clearly erroneous standard of review.  *Id*. at 1354; *Robinson*, 987 F.2d at 668; *Barrett*, 964 F.2d at 591.

The appellee points primarily to the timing of Mrs. Allen's bankruptcy filing, just three days before the foreclosure sale was scheduled to take place, in arguing that she did not file her bankruptcy petition in good faith.  Appellee's Br. ¶¶ 2-3, 16.  Additionally, the appellee notes that Mrs. Allen was a Pennsylvania resident at the time she filed for bankruptcy, and that she

9

lacked the financial resources necessary to fund a bankruptcy plan. *Id*. ¶ 16.  As the Bankruptcy

Court noted, when Mrs. Allen sought dismissal of her case just 56 days after filing, she had yet to

file a schedule, a statement of financial affairs, or a bankruptcy plan.  Bankr. Ct. Decision at 14.

All of this, the appellees contend, shows that Mr. Allen's transfer to Mrs. Allen, and Mrs. Allen's

subsequent bankruptcy filing, are nothing more than a sham.  Appellee's Br. ¶ 16.

The appellants argue that the Bankruptcy Court's conclusion that Mrs. Allen filed her

bankruptcy petition in bad faith was clearly erroneous.  Appellant's Br. at 14.  As stated

previously, a factual "finding is clearly erroneous when, although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed."  *U.S. Gypsum Co.*, 333 U.S. at 395. In the instant case, this court's

review of the evidence does not leave it with the firm conviction that the Bankruptcy Court made

a mistake.  Coupled with Mr. Allen's last minute conveyance to Mrs. Allen after his own

bankruptcy petition was dismissed with prejudice, the timing of Mrs. Allen's bankruptcy petition

supports the Bankruptcy Court's determination.  Assuming *arguendo* that this court would have

ruled differently than the Bankruptcy Court, this court would still uphold the Bankruptcy Court's

decision.  *Johnson*, 236 B.R. at 518 (explaining that if the lower court's factual findings are

plausible in light of the record, the reviewing court may not reverse those factual findings even if

it would have weighed the evidence differently) (citing *Anderson*, 470 U.S. at 573-74).

Consequently, the court affirms the Bankruptcy Court's finding that the appellants' March 2003

Chapter 13 filing was not made in good faith.

**3.    The Bankruptcy Court did not Err in Determining that the Deed
of Trust Voids Mr. Allen's Conveyance to Mrs. Allen**

Mr. Allen's deed of trust contained a due-on-transfer clause.  Bankr. Ct. Decision at 7.

Pursuant to the terms of that clause, Mr. Allen agreed that if he sold or transferred any part of the

property without the appellee's prior written consent, the appellee had a right to require full and

immediate payment of the mortgage.  *Id.* at 8.  The Bankruptcy Court held that Mr. Allen's

failure to receive the appellee's written consent prior to conveying part of the title to Mrs. Allen

voided the transfer to Mrs. Allen.  The appellants argue that the Bankruptcy Court erred by

finding, as a matter of law, that Mr. Allen's deed of trust voids the conveyance from Mr. Allen to

Mrs. Allen.  Appellants' Br. at 20.  The appellants argue that the deed of trust simply provides an

option to the lender to accelerate full payment of the loan in the event that the debtor transfers the

property to another without the lender's written consent.  *Id.* at 21.  They believe that it does not,

however, void the property interest transferred from Mr. Allen to Mrs. Allen without written

consent.  *Id*.  The appellee counters that the court's finding is supported by the record and

represents a permissible view of the evidence.  Appellee's Br. ¶ 17.

The effect of the deed of trust upon the conveyance of property from Mr. Allen to Mrs.

Allen is a legal question subject to *de novo* review by this court.  *Cooter*, 496 U.S. at 405.

Courts are split as to the effect that a transferor's violation of a due-on-transfer clause has on a

transferee's power to bring a bankruptcy case.  Some courts hold that a party who, like Mrs.

Allen, purchases property in violation of a mortgage's due-on-transfer clause may nevertheless

cure the violation and reinstate that mortgage in a bankruptcy case.  *See generally In re Garcia*,

276 B.R. 627 (Bankr. D. Ariz. 2002); *In re Rutledge*, 208 B.R. 624 (Bankr. E.D.N.Y. 1997); *In*

*re Allston*, 206 B.R. 297).  In other words, when a party has purchased property in violation of

the mortgage's due-on-transfer clause and that purchaser subsequently files a bankruptcy petition,

the mortgagor may not seek relief from the automatic stay on the basis that the purchaser is not

the original mortgagee.  *In re Garcia*, 276 B.R. at 628.  Other courts have held to the contrary,

reasoning that the new owner's continued retention of the property constitutes a modification of

the mortgage, and that such modification is a violation of 11 U.S.C. § 1322(b)(2).[10]  *In re Parks*,

227 B.R. 20 (Bankr. W.D.N.Y. 1998); *In re Kizelnik*, 190 B.R. 171 (Bankr. S.D.N.Y. 1995); *In

re Martin*, 176 B.R. 675 (Bankr. D. Conn. 1995); *In re Threats*, 159 B.R. 241 (Bankr. N.D. Ill.

1993).  The D.C. Circuit has not decided which line of cases controls in this jurisdiction.

Assuming, as the appellants urge, that the Bankruptcy Court should have followed the

first line of cases, this court would nevertheless uphold the Bankruptcy Court's determination

that the conveyance to Mrs. Allen was void.  In other words, the Bankruptcy Court was correct in

concluding that the appellants' case was distinguishable from the cases holding that a party who

purchases property in violation of a mortgage's due-on-transfer clause may nevertheless cure the

violation.  Specifically, the Bankruptcy Court found that the instant case was distinguishable

from the first line of cases because "[i]n those cases, the mortgagees either did not argue the

existence of bad faith, or the court expressly found no bad faith existed."  Bankr. Ct. Decision at

24-25.  In contrast to the first line of cases, the instant case deals with a last-minute transferee

filing for bankruptcy on the eve of foreclosure after the original mortgagor had already tried

unsuccessfully to file for bankruptcy.  Bankr. Ct. Decision at 24.  For the foregoing reasons, the

---

[10]     Section 1322(b)(2) disallows bankruptcy plans that modify the rights of any creditor
whose claim is secured by an interest in real property where the property is the debtor's principal
residence.  11 U.S.C. § 1322(b)(2); *see also Till v. SCS Credit Corp.*, 541 U.S. 465, 475 (2004).

court affirms the Bankruptcy Court's determination that the due-on-transfer clause precludes the appellants' filing.

### 4.    The Bankruptcy Court did Not Err in Annulling the Automatic Stay

The appellants argue that there is no substantial evidence in the record to support the court's decision to annul the automatic stay.  Appellants' Br. at 23.  The appellee counters that there is substantial evidence in the court record to support the Bankruptcy Court's decision to annul the stay.  Appellee's Br. ¶ 15.  Whether it was appropriate to annul the automatic stay in the appellants' foreclosure proceedings is a legal question subject to *de novo* review by this court. *Cooter*, 496 U.S. at 405.  The "decision of whether to lift the stay is committed to the discretion of the bankruptcy judge." *Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (internal brackets omitted) (citing *Holtkamp v. Littlefield*, 669 F.2d 505, 507 (7th Cir. 1982).  The Second Circuit noted that "[i]n extreme cases a finding that the bankruptcy case was not commenced in good faith has been used as a basis for vacating or annulling the automatic stay." *Sonnax Indus., Inc.*, 907 F.2d at 1286.  As discussed *supra*, the Bankruptcy Court held that the appellants' bankruptcy filing constituted an abuse of the bankruptcy system. Because substantial evidence exists in support of the annulment, this court affirms the Bankruptcy Court's conclusion.

## IV.   CONCLUSION

For the foregoing reasons, the court affirms the Bankruptcy Court's decision to deny

reconsideration of its annulment of the stay in the appellants' foreclosure proceedings.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued this 13th

day of December, 2005.


_____
RICARDO M. URBINA
United States District Judge